Before we take a break... Johnson v. Reliance Standard Life Johnson v. Reliance Okay. Ms. Carr. May it please the Court. My name is Heather Carr. I represent the plaintiff in this matter, Cherise Johnson. In these cases, disability cases covered under ERISA for long-term disability, there are two general types of preexisting condition clauses. One is a clause that says, when did this disease originate? If it originated before the effective date of the policy, we're going to exclude it. The other type of clause, and the clause that we have here, is what is more properly termed a prior treatment clause. Were you treated for this condition prior to the effective date of the policy? And in that situation, you look back and you say, were they diagnosed with the condition? Or at least, at the very least, did their doctor reasonably suspect that they had the condition? Every court that has examined this issue, and there have been six circuit courts and at least one state, has held that when a condition was completely unsuspected, as it was here, no one disputes that she wasn't treated for this condition. No one knew she had scleroderma. No one tested her for it. No one ruled it out. No one examined the criteria for scleroderma during the preexisting condition. In such a case, all six circuits have held that it is not reasonable to interpret the preexisting condition to exclude coverage. If the Eleventh Circuit were to decide against these circuits, it would be creating a circuit split where none exists, and it would frustrate the purposes of ERISA, which are to protect the employee and to provide uniformity in the administration of employee benefits plans. Alternatively, if the Eleventh Circuit were defined in Johnson's favor, it might reduce litigation on this issue in the future by joining the sister circuits. In this case, the preexisting condition calls itself read, any sickness or injury for which the insured received medical treatment. For is an important word here. It requires intent. It is extremely difficult for a doctor to treat you for a condition when the doctor has no clue and doesn't even suspect that you have it. And that is the crux of this matter. Further, if you look at the policy, sickness itself is defined as an illness or disease. Not symptoms, an illness or disease causing total disability. And the thing that caused total disability in this case is scleroderma, which is a very rare illness. And not one of her doctors suspected that she had it. If you look at the other side's cases, every single case that they cited in their favor, every single one is distinguishable, including the Eleventh Circuit's case of Ferrizzi. The Eleventh Circuit held in a case where a gentleman went in and said, I am disabled due to substance abuse. And that was not diagnosed until after the effective date of the policy, and thus the preexisting condition treatment does not apply. Well, the Eleventh Circuit said, well, it does apply, because you were suspected to have substance abuse during the look-back period. Specifically, a doctor, Mr. Ferrizzi went into the doctor, and the doctor did not prescribe narcotic medication during that time, because the doctor said he was displaying drug-seeking behavior. So the doctor treated him during the look-back period as if he were an addict, as if he suffered from substance abuse. Thus, Ferrizzi does not bar Ms. Johnson's claim. In fact, I would argue that Ferrizzi supports her claim. Well, it would bar it anyway, because it's unpublished, right? And I find it interesting that I've seen a lot of citations from district courts to Ferrizzi. Fewer, I think, to Hornland, which I think got even less attention in the briefing here, although it was discussed, I believe. But Hornland seems to me to be more similar to what the other circuits have said in these instances, where it was a per curiam, but that the panel disagreed with the rejection of the benefits for preexisting conditions, because pain and muscle spasms were the symptom for which an accidental bodily injury, a disease, a disorder, or a condition might be the cause. And so there the court, I think, did something more similar to what's happened. Although, as you say, maybe Ferrizzi can be read to be similar as well. But Hornland, I think, was more obvious in its path towards differentiating between treatment of symptoms and treatment for a condition. I think that's absolutely right. Hornland didn't make a definitive decision. I believe it remanded it back to the lower court. But it did say, for example, muscle spasms in and of themselves are not a condition for which you can exclude coverage. It has to be an actual, and in this policy, illness or disease. And so I cited Hornland for two purposes. One is that Hornland says that you interpret these clauses using the plain, ordinary meaning, as an ordinary person would interpret this. And two, to state that a mere symptom is not the same as a condition that can be excluded. And I do think Hornland was on point for that. I do think that our confusing and somewhat unique six-part process for these ERISA claims has more layers of complication, as such tests often do. One thing that I've really been, I'll say, working through is how we could say that a, I think, plausible interpretation of this provision in the plan is unreasonable or arbitrary and capricious, even if it's not the one that I would come to or that apparently six other circuits would come to. Once we get past the de novo view of whether this was correct, how do we get to, it was unreasonable for this plan administrator who we have to give deference to, because the agreement gives that administrative deference. How do we get from A to B on that front with our various other tests? Exactly. Well, the way the law appears to be at this moment is that they bear the burden on this provision. So what Ferrizzi said is that they are the ones that have to prove that it's wrong and unreasonable. However, arguably, under the Eleventh Circuit's provision, contra preferendum does not apply at the are they reasonable step. So I would argue that this interpretation that they're arguing is not even plausible, that it would act to deprive an ordinary insurance premium person, paying person, of the benefit of their bargain here, because any condition in the past could be, in retrospect, tied to the ultimate condition that a person becomes disabled for. The McLeod case, for example, went into this. And they said, well, a person could go in and be treated for high blood pressure and then later be diagnosed with a heart attack or have a heart attack after the effective date. Well, you could look back and say, well, yes, the high blood pressure is related to the heart attack, but they weren't treated for a heart attack during the preexisting condition. So I don't believe that a retrospective analysis is reasonable. So I think that's... Do you think in, maybe in, and I hesitate because it really is a bugaboo of mine where we rely on, or district courts rely on unpublished cases as if they were unprecedented, but looking at Farizi even, would you say that maybe in the reasonableness question comes, not in the interpretation of what the contract actually covers, but in whether it was reasonable to believe that this particular condition had been treated? Exactly. Definitely, Your Honor. There isn't one scintilla of evidence that the doctors tested for this, examined the criteria for it, that they even considered it. If you look at the look-back period, the word scleroderma wasn't even mentioned, nor were the conditions that they claim are related, like Raynaud's or interstitial disease. And what's more is if you look at their final denial letter, which in a RISA case under the arbitrary capricious standard is almost like a court order. It is that which you judge their decision by. It's their final act. Their final denial letter doesn't even mention the word scleroderma. So they never actually said which symptoms that they thought were related to scleroderma. I mean, even if you accepted their argument that an unsuspected illness is capable of being excluded by the preexisting condition, period. If they can't tell you which symptoms are related to scleroderma, then they can't argue that the disease originated, because they really are trying to turn this into an origination clause, but they can't argue that the disease originated prior to this case. Thank you. Thank you, Meg. Please, the Court. Good morning. I'm Joshua Bacharach. I represent Reliance Standard. Contrary to the arguments being made about whether there's an origins or whatever diagnosis, there's no such law that I'm aware of. The question is whether this is a preexisting condition. The word diagnosis doesn't appear anywhere in the Reliance Standard policy. Anywhere. On the other hand, the word, and that's a good point, Your Honor, because it's not just treatment. It is treatment, care, consultation. In terms of the diagnostic procedures, which would suggest it doesn't have to have been previously done. Exactly. How could it be if you're undergoing diagnosis? And if you look at the exclusion itself, it refers to, it defines itself by the word sickness. And sickness is defined in the policy as illness causing total disability while the coverage is in effect. So it specifically does not require a diagnosis. It requires a sickness. It requires an illness. And illness is defined generally, naturally, and my client reasonably would define it as a state of unhealthy being. So there's no trial and error in that. I mean, it seems like that encompasses everything that anybody could get. You could define it as a preexisting condition. Not at all, Your Honor. When you look at the, it's claim specific, okay? It's definitely claim specific. And in this claim, the disability claim application stated that she was unable to work. She was disabled due to lung problems, joint pain and joint swelling. And in our brief, we detail that during that three-month look back period, the numerous times she treated for lung and tested for lung problems, breathing problems, joint pain and joint swelling. This isn't like the McLeod case from the Third Circuit that they rely on, where all there was was this arm pain. That was it. That was the only basis for a consultation before the coverage went into effect. The condition was MS. And there was no suggestion of it there. But was there any suggestion of scleroderma here? I agree, I think, that if they had tested her for scleroderma, and let's say they tested her the week before the look back period ended, and they didn't have the results until the day after insurance coverage was effective, right? I think that that would count as diagnostic treatment for scleroderma. But would the same thing be true if I had a brain tumor, but I didn't know that, right? And I went in and I was suffering headaches, and the doctor said, well, you must be really stressed out. You're reading a lot at work. Please try getting more rest and here's some Tylenol. Would I have been treated for my brain tumor? Well, that's very similar to the Bullwinkle case out of the Seventh Circuit. And so when counsel says six circuits have held to the contrary of Farese, and that's wrong. So I'm going to get into those cases now. So in the Bullwinkle case, the person was diagnosed. So your question, the Bullwinkle case answer, that's why it's going there, but I'll answer specifically. That if a person has a condition, but it's not diagnosed until afterward, is that what your Honor is asking? No, my question is if I went under your interpretation of this policy, if I went in with headaches, and the doctor told me that I needed to sleep more and take some Tylenol, because my headaches were a result of stress and reading too much, and it turned out that I had a brain tumor that had been causing those headaches, would I have been treated for the brain tumor when the doctor consulted with me about that and told me to sleep more and take more Tylenol? It depends on the language in the policy. In this policy, it doesn't require diagnosis. It is a condition. You treated for a condition under your... Yes, I was treated for brain cancer in that hypothetical. It's not brain cancer, you treated for headaches. That's not the language in this policy. The language in this policy says condition, which is sickness, which is defined as illness. So you treated for a sickness, which was the headaches. You're saying that if you were treated for a symptom attributable to that sickness that you later claim after it's diagnosed is cover, but you were receiving that treatment for that symptom during the look-back period, that yes, it's excluded. Correct. I don't think there's a distinction there, to be perfectly honest. The symptom that you're treating for is a headache, and the symptoms here that she was treating for were lung problems, joint pain, joint swelling. When I take treatment for my brain tumor, my goal is not to get rid of my headache, right? My goal is to get rid of my brain tumor. But the headache is what led you to the doctor, what caused... So basically what you're saying is that if a doctor commits malpractice by failing to properly diagnose a condition, then an exclusion doesn't apply, and that can't be the law. Although we wish that medicine were perfect, and we wish that we got the right answer the first time we went to the doctor every time, I think that's obviously not the case. We all know that. It seems to me that what you're arguing for is more of the, if you had a condition that we can figure out that you had, that you must have had retrospectively, then that's not covered. But I'm just not sure that the treatment and diagnosis language supports that view of the contract. That's what the Bullwinkle Court case stated. And that was de novo review, by the way, so I'm going to get that in a second. Under de novo review, the court stated, the Seventh Circuit stated that the only reasonable inference was that a lump that was found to be cancerous only after coverage began was also cancerous before the bug coverage began when the lump was discovered. But that was the case where they suspected that it was cancer and were engaged in diagnostic procedures before the end of the trial. It wasn't necessarily suspected. So the distinction there is with the Pitcher case later on where they said the exclusion doesn't apply. Why? Because this person had a long history of these fibroids in her breast and it could have been that. But this is different. We knew what it was, right? Here, I'd like to point out the Marshall case because also... It seems to me that we assume it was de novo wrong. We're at the heightened arbitrary and capricious review stage. Reliance considers scleroderma a pre-existing condition because Johnson self-identified her symptoms. As coughing and painful hands and feet, stated she first sought treatment for them in January 2016, well before the look-back period. Her rheumatologist confirmed that she first experienced symptoms of scleroderma in October 2015 and had received treatment from him every one to three months, including during the look-back period. He reported joint pain, swelling, and shortness of breath as symptoms of her condition. Her medical records from the look-back period show that she saw multiple providers, underwent diagnostic procedures, and was prescribed medications for these symptoms during the look-back period. That is correct, Your Honor. So, Your Honor, you raise an interesting point when you were saying earlier that this six-point step, and it used to be five, is a pain. And courts take a jump step. They say, we're not even going to look at de novo wrong. We're just going to go right to, is it reasonable? And I think Your Honors can do that. The problem I have in this case is that if we make a conclusion that it's de novo wrong, then we have to make a conclusion that this policy didn't actually exclude Ms. Johnson's subsequent coverage because of scleroderma, because she wasn't treated for that, or diagnosed for it, or et cetera, et cetera. And what you're saying is, but she was. So I don't think you're arguing really that it was reasonable to conclude that she really was treated for a condition that her doctor suspected was scleroderma. I think you're arguing that the policy says if you have symptoms of a condition and you're treated for those symptoms beforehand, then that means it's a preexisting condition. But that can't be true if it was de novo wrong. Well, actually, courts, okay, so we're running to the problem again of contra pro farentum, what is arbitrary and capricious. For argument's sake, I would say that some courts have found an ambiguity. An ambiguity, and under contra pro farentum, that means a claimant prevails. But this is not de novo review. It's important to me to know whether you actually concede that it was wrong under de novo review, or you just want us to pretend that that's not part of the steps. I don't, because what I found and we've cited to is an Arizona case and other district court cases under non-ERISA circumstances, which have accepted the same conclusion that a diagnosis is not required. And so I'd like to discuss those cases, because I think they're highly important. The Eighth Circuit, contrary to what counsel said, was we need to only decide whether her disabling condition is linked to her preexisting condition. No diagnosis required. That's the Marshall decision. And then we go to the Fifth Circuit. I don't think it was substantively different. I do not believe it was. I'd also refer to the Johnson case, I'm sorry, the Smith v. United of Omaha case out of the Fifth Circuit, unpublished. And it said that Smith's, well, in that case, the court stated that it was not, quote, superimposing a requirement that there be a preliminary diagnosis of a disabling condition for it to be a preexisting condition, end quote. Ms. Johnson is requiring that either. We'll see what counsel says. That's not how I've understood their argument. Their argument is that it has to be at least suspected in the same way that my brain tumor hypothetical, if the doctors suspected a brain tumor but didn't have time to diagnose that tumor before the end of the look-back period, then that would be a preexisting condition. But if they just think that I'm tired and need some Tylenol, then that would not be a preexisting condition. You see the difference between those two, right? I do, but again, the definition of the policy of preexisting condition is a sickness. Sickness is defined as illness, and illness means a state of ill health. It doesn't require a diagnosis to have ill health or be in bad health. Is a headache an illness, or is it a symptom of an illness? Well, then let's look at the facts here. Lung problems, joint disease and joint swelling, that's an illness. That's a state of ill being. So under your hypothetical, the exclusion does apply. And I'd also like to address, Your Honor, you mentioned the Hornland case, and you thought it was closer to what we have here. And I disagree for a few reasons. One is de novo review in that case. It's not here. Also, in that case... I have, Your Honor. As I mentioned, there are cases even under non-ERISA which have said that is a correct interpretation. And therefore... Yes, it is, Your Honor. And if you're wrong about that, your position is that it's nevertheless a reasonable one that would survive review. Where we assume, I mean, the whole nature of the heightened arbitrary and capricious standard is we assume or we find, either way, that it's de novo wrong. You can nevertheless still win if you had a reasonable basis. And that means a reasonable interpretation, right? And that is correct, even if the court would have reached an opposite conclusion. That's the law of this circuit. Going back to the Hornland case, I also think it's important that that court stated it was a very confusing record. And it said, quote, the underlying cause of the plaintiff's back pain and muscle spasm could constitute a preexisting. It's just there weren't enough facts to support it there, so that case does not support their position whatsoever. It's true that the letters do not mention, the decision letters do not mention scleroderma. They just mention symptoms, right? Because they don't, exactly, because it doesn't need to, because it's not a preexisting diagnosis exclusion. It's a preexisting condition, which is defined as a sickness. I'd like to, in my limited time that I have left here, I'd like to point out what Parisi actually said. And, Chief Judge Pryor, you were on that panel in that case. It said, quote, the policy's own definition of a preexisting condition does not require a specific diagnosis or a specifically timed diagnosis of a condition for the exclusion to apply. And under Eleventh Circuit Rule 36-1, that's not binding authority. It is persuasive authority still. And therefore, we ask the Court to affirm. It seems, as is often true in our unpublished opinions, which is why they're not binding, there's very little analysis of that. I think there is one paragraph there. So, what is persuasive about that, other than the fact that it agrees with your client's position? It's persuasive because it's the exact same language as in this case, the policy language in this case. It's persuasive because each of the arguments that were raised by Ms. Johnson were raised in the Parisi case. It is persuasive because most of the cases they rely on were addressed in that court, and the Court still came to the conclusion that a specifically timed diagnosis is not required for the exclusion to apply. And contrary to what they've argued, many courts have said that, too. For them to say that no court has ruled the same way as Parisi is completely wrong, especially when cases they've cited to were saying that it's ambiguous, which means we win, because that means we have proposed a reasonable interpretation. The definition of an ambiguity would be more than one plausible interpretation. Correct, Your Honor. Thank you, Your Honors. First question. Do you say that a diagnosis of a condition is required during the look-back period? No, Your Honor, I don't. I think it has to be reasonably suspected, though, and in Parisi What exactly is going on in the language of the policy? In the language of the policy, I would say on the sickness clause. It says that it How does the word sickness suggest that it had to have been reasonably suspected? Okay. Even if you haven't figured out what that ailment is, haven't you nevertheless received treatment for the ailment? Not for the ailment, for which you have to be treated for well. That implies intent. The intent is, you understand what the symptoms are, but the underlying cause is a different matter. How is that enough of the intent? Every circuit that has addressed this issue, and that is absolutely accurate,  I read Bullwinkle, I read Marshall, I read Hughes, all of which seem to me to support Your Honor's interpretation that you can have a diagnosis after the fact and nevertheless execute. She went in for a lump in her breast. The doctor said let's be safe and biopsy it. He was concerned. Let's talk about Marshall. She's treated for muscle pain, later diagnosed as chronic fatigue syndrome. That seems to be precisely what we're doing here. Exactly, except in Marshall they examined the criteria for chronic fatigue syndrome during the look-back period. Which is a form of... Exactly, they did diagnostic procedures and they didn't hear. So even though they didn't diagnose her with chronic fatigue syndrome, they examined her and considered whether she should receive that diagnosis. Exactly, it was considered during the look-back period. You're saying that the fact that they're looking for...  I believe that if you're looking for it, it might be suspected. You're saying that sickness is what makes the difference. So the definition is sickness means illness or disease causing total disability. Yes, it has to be such a condition that it actually causes total disability. It can't just be random symptoms. I had a headache that I was treated for during the look-back period. And then later afterwards it was discovered that my headache was from a brain tumor. Was that headache a total disability? So was I treated for a sickness at that point or was I treated for one symptom of the ultimate sickness? You're treated for a symptom of the ultimate sickness. And this is their language. It has to cause a total disability. This is not language that the plaintiff is creating here. And further, during the preexisting condition period, the look-back period, during that period, those three months, she was diagnosed with many other illnesses. The doctors thought that she had lupus probably. They said fibromyalgia, somatoform disorder. She was treated for all of those things. They just don't figure it out until later. Why isn't that then reasonable? Misdiagnoses under all of the case law are not considered preexisting conditions. They're not. I mean, if you miss it or if it's latent or if it's hidden. If you interpret preexisting conditions in that manner, then anyone who went in for any symptoms that later turn out to be consistent with what you actually go out with, the policy would never cover you. Exactly. But they exist for a reason, Your Honor. They exist to prevent fraud. And what is fraud in a preexisting condition? It's when a person knows they have a condition and they go out and seek the insurance anyway. That is not the case here. So preexisting conditions, you do not serve the purpose that preexisting conditions serve in a policy and to interpret it in this manner. Because the other purpose of a preexisting condition is to protect innocent premium-paying insurers who didn't know they had the condition. And you wouldn't want to discourage people not to get treatment during that period. You want people to get treatment for their illnesses. You don't want people to avoid that due to this. And if they were honest about this, what Reliance Standards should have said is they should have said, we're just not going to cover anyone for a whole year. I mean, because that's their interpretation. Because if you go in and get any symptoms whatsoever that later turn out to be consistent with your disability. You can just easily say that your position also incentivizes fraud in this sense, which is, I've got a lot of problems. My clients haven't yet been able to figure out what they are. I better go get some insurance so that when it's later diagnosed. But not in this case. She had the job as an independent contractor well before she became. So there is absolutely no facts whatsoever indicating that or undermining her credibility. The point is this policy about incentivizing fraud, your position incentivizes it in that respect. I don't think so, Your Honor. Gosh, I've got all kinds of problems. Well, you'd be taking a big risk if you went to the doctor. Because the doctor might diagnose you. I don't see that happening. People, if they have a lump on their breast, they're going to go get treatment for it. I understand that. But if you don't have insurance and you've gotten that treatment at the emergency room, you might say, gosh, I better get some insurance. This isn't getting better. Well, you're right, Your Honor. These cases are fact-specific, and there are no facts whatsoever in this case that indicates that. Would you say that Justice Alito, not known as a big softie, was correct when he was on the Third Circuit and worried that considering treatment for symptoms of a not-yet-diagnosed condition as equivalent to treatment of the underlying condition ultimately diagnosed might open the door for insurance companies to deny coverage for any condition, the symptoms of which were treated during the exclusionary period? Exactly. Exactly. I think Judge Alito was exactly right. Then we get to the heightened arbitrary capricious review. Right. But, of course, they bear the burden on this. And you've told them that three separate times in three separate cases. So whether or not... I fully understand your case, Ms. Carr. We're going to take a few minutes recess. We'll be back at the top of the hour.